IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLORIA G.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | )  No. 22 C 2770 |
| v. | ) |
| | )  Magistrate Judge Laura K. McNally |
| MICHELLE A. KING, | ) |
| Acting Commissioner of | ) |
| Social Security,[2] | ) |
| | ) |
| Defendant. | ) |

## ORDER[3]

Before the Court is Plaintiff Gloria G.'s motion in support of summary judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision denying her applications for disability benefits (Dkt. 12: Pl. Mem. in Support of Summ. J., "Pl.

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Michelle A. King for her predecessor, Carolyn Colvin, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On May 31, 2022, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 6.)

Mem.") and Defendant's motion and brief in support of summary judgment (Dkt. 18: Def. Mot. for Summ. J.; Dkt. 19: Def. Mem. in Support of Summ. J.: "Resp.").

## I. Procedural History

Plaintiff applied for disability insurance benefits ("DIB") on February 6, 2020 and supplemental security income ("SSI") on February 24, 2020, alleging disability for both claims beginning November 18, 2018. (R. 287.) Her date last insured was June 20, 2024 (R. 28.) The ALJ held a hearing on September 21, 2021, at which Plaintiff (who was represented by counsel), and a vocational expert testified. (R. 48.) On November 24, 2021, the ALJ issued a decision finding Plaintiff not disabled, and she subsequently appealed.[4] After considering the parties' briefs and evidence, the Court grants Plaintiff's motion for remand, and denies the Commissioner's motion to affirm.

## II. ALJ Decision

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date (R. 28-29.) At Step Two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine with osteoarthritis, sciatic nerve pain, chronic pain syndrome and

---

[4] The Appeals Council subsequently denied review of the second opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

2

myofascial pain, obesity, posttraumatic stress disorder, bipolar depression, depression, and anxiety. (R. 29.) She determined that Plaintiff's other medically determinable impairments, including anemia, diabetes, hypertension, elevated cholesterol, history of substance abuse, degenerative changes of the left shoulder, thrombocytopenia, hyponatremia, and hypokalemia were nonsevere. (*Id.*) Specifically, the ALJ noted that all of these impairments either did not exist for 12 consecutive months, were responsive to medication and/or treatment, did not require significant medical treatment, and/or did not result in any continuous functional limitations. (*Id.*)

At Step Three, the ALJ found that none of Plaintiff's impairments met a Listing. (*Id.*) With respect to Plaintiff's mental impairments, the ALJ undertook the Paragraph B analysis and determined that Plaintiff had mild limitations in understanding, remembering and applying information, interacting with others, and adapting and managing herself and moderate limitation in concentration, persistence, and pace. (R. 30-31.) Before Step Four, the ALJ determined that Plaintiff had the following residual functional capacity:

> Sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can never crawl or climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs, balance, stoop, crouch or kneel. The claimant cannot work at unprotected heights or around hazardous machinery, nor may she perform commercial driving. She may only occasionally operate foot controls bilaterally. The claimant can reach overhead no more than occasionally, bilaterally. She should avoid concentrated exposure to vibration. The claimant must be allowed to alternate between sitting and standing at will. While doing so, she will remain on task. The claimant is limited to simple, routine tasks with no fast-

3

paced production such as assembly line work or work where a machine sets the pace of the work. Work is of a variable rate. The claimant can have no strict production, hourly requirements, but can have end of the day work goals. She should not perform tandem tasks. (R. 31.)

At Step Four the ALJ found Plaintiff was unable to perform her previous work as a fast-food worker, sales associate, file clerk, or babysitter. (R. 37.) At Step Five, the ALJ found there were other jobs in the national economy Plaintiff could perform. (R. 38.) As relevant to this opinion, the ALJ accepted the testimony of the vocational expert that Plaintiff could perform the jobs of Eye Glass Assembler, Dictionary of Occupational Title (DOT) Code 713.684-038, Circuit Board Tester, DOT Code 726.684-110, and Costume Jewelry Maker, DOT Code 73.687-034. (R. 38.) Therefore, the ALJ held that Plaintiff was not disabled. (*Id*.)

### III. Legal Standard

Under the Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022) An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*,

4

587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.

The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit further has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

5

**IV.** **Analysis**

Plaintiff makes two arguments in favor of remand: (1) the residual functional capacity determination is not supported by substantial evidence because no medical opinion supports it, and (2) the ALJ failed to reconcile a conflict between the VE's testimony and the DOT and therefore, substantial evidence does not support her Step Five finding. (Pl. Mem. at 1.) After reviewing the record and in light of the recent recission of social security regulations governing the Step Five analysis, the Court concludes that only the first issue warrants remand.

**A.** **The ALJ Failed to Support the Residual Functional Capacity with Substantial Evidence.**

Plaintiff argues that the case must be remanded because no medical opinion supports the residual functional capacity.[5] She contends that the ALJ impermissibly "played doctor" in fashioning the residual functional capacity. The Court agrees.

"[T]he responsibility for the [residual functional capacity] assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own [residual functional capacity] finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, No. 22 C 50153, 2023 WL 6388207, at *2 (N.D. Ill. Sept. 29, 2023) (internal citations omitted, citing *Briscoe ex rel. Taylor v.*

---

[5] Plaintiff erroneously contends that the ALJ found all of the medical opinions in the record "not persuasive." (Pl. Mem. at 9.) In fact, the ALJ found the opinions of Drs. Mikell and Western, who evaluated Plaintiff's physical limitations, "less persuasive" and the opinions of Drs. Voss and Mehr, who evaluated Plaintiff's mental functioning, "not persuasive." (R. 36.)

6

*Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). Moreover, "[t]he Seventh Circuit has repeatedly held that an ALJ may not 'play doctor and interpret new and potentially decisive medical evidence without medical scrutiny."' *Brian M. v. Kijakazi*, No. 22 C 191, 2023 WL 5852193, at *5 (N.D. Ill. Sept. 11, 2023) (quoting *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018)). Furthermore, "[t]he Seventh Circuit has been especially critical of ALJs' attempts to deduce the meaning of complex medical documents, such as MRIs." *Id.* (quoting *Tobias B. v. Kijakazi*, No. 20 C 2959, 2022 WL 4356857, at *6 (N.D. Ill. Sept. 20, 2022)); *Theresa M. v. Saul*, No. 19 C 3135, 2020 WL 7641286, at *5 (N.D. Ill. Dec. 23, 2020) ("[A]s the courts in this circuit have held on numerous occasions, it is for doctors, and not ALJs to interpret x-rays, MRIs, and other raw medical data, even if those scans appear to be mild or unremarkable."). In this case, the ALJ interpreted just such medical imaging without the assistance of a medical expert or opinion.

The medical record contains only two opinions about Plaintiff's physical limitations, both from non-examining state agency physicians. At the initial level, on December 16, 2020, Frank Mikell, M.D., opined that Plaintiff could perform light work with additional postural limitations. (R.104)[6] Dr. Mikell cited Plaintiff's history of moderate to severe stenosis in her lumbar spine, anemia, obesity, left shoulder degenerative joint disease, and high blood pressure as the reasons for his opinion. (R.

---

[6] These additional limitations were frequent climbing of ramps, stairs, ladders, ropes, and scaffolds, occasional stooping, and frequent kneeling, crouching, and crawling. (R. 104.)

104-05.) He further stated that he was unable to fully assess Plaintiff's limitations because the record contained no current evaluation of Plaintiff's gait or range of motion in her lumbar spine. (*Id.*) At the reconsideration level, Dr. Jennifer Western[7] confirmed Dr. Mikell's opinion on April 9, 2021. (R. 141.) Dr. Western repeated Dr. Mikell's reasoning for finding Plaintiff able to perform light work with postural limitations. (R. 141-43.)

The ALJ found Dr. Mikell's and Dr. Western's opinions "less persuasive" because neither doctor reviewed the entire record. (R. 36.) She then changed Plaintiff's residual functional capacity level from light to sedentary because of "the combination of the claimant's obesity and the objective MRI findings documenting moderate to severe central canal and bilateral neural foraminal narrowing as well as osteophyte complex, in combination with the claimant's continued treatment." (*Id.*) Additionally, she added a sit-stand option "in consideration of the claimant's reported pain with extended sitting, combined with her positive straight leg raise testing and objective imaging of the lumbar spine." (*Id.*) Elsewhere in the opinion, the ALJ explained that she "considered the multiple MRI, CT and x-ray findings, including the severe bilateral neural foraminal stenosis, central canal stenosis, diffuse disc osteophyte complex, and facet degenerative changes" as reasons for her residual functional capacity determination. (R. 35.)

---

[7] Dr. Western's opinion does not designate her medical licensure. Medical consultants must be licensed physicians, per 20 C.F.R. § 404.1616, and thus the Court will refer to her title as "doctor" throughout this decision.

In reviewing the ALJ's decision, the Court is unable to determine whether and to what extent the ALJ interpreted complex medical information that the state agency doctors did not review. The ALJ's only stated reason for finding the state agency opinions "less persuasive" was the fact that they were based on incomplete evidence. (R. 36.) From the Court's analysis, it appears that the latest medical imaging the doctors reviewed was dated August 2020. (R. 105-106.) In justifying her residual functional capacity determination, the ALJ cites to CT and x-ray results dated November 2020 and January 2021. (R. 33, citing exhibits 7F, 11F, and 15F.)

In the absence of any explanation to the contrary, the Court must conclude that the ALJ improperly interpreted this evidence herself. And while the ALJ's residual functional capacity determination is more restrictive than that of the state agency doctors, the Court cannot trace the ALJ's reasoning from the new evidence to her conclusion that Plaintiff could engage in sedentary work. It is possible that the new medical imaging would not result in greater limitations than the ALJ found, but neither the Court—nor the ALJ—is qualified to say so. Therefore, the ALJ impermissibly "played doctor," and so substantial evidence does not support the residual functional capacity determination.

**B.     The Step Five Analysis**

At Step Five of the sequential analysis, the ALJ found there were significant jobs in the national economy Plaintiff could perform. The ALJ based that determination on

9

testimony the vocational expert gave at the hearing that at least 385,000 jobs described in the Dictionary of Occupational Titles (DOT) existed nationally for a person with plaintiff's residual functional capacity: 103,000 eyeglass-assembler jobs, 117,000 circuit board-tester jobs, and 165,000 costume jewelry-maker jobs." (R. 39.)

Plaintiff and Defendant agree that the three jobs the vocational expert testified Plaintiff could perform all require "frequent reaching" per the Dictionary of Occupational Titles ("DOT"). *See* https://occupationalinfo.org, *visited on* February 7, 2025. (Pl. Mem. at 12; Resp. at 9-10.) Therefore, Plaintiff contends there is "an apparent unresolved conflict" between the vocational expert's testimony and the residual functional capacity's limitation to "occasional overhead reaching." (Pl. Mem. at 12.) Plaintiff further argues that pursuant to SSR 00-4p, the ALJ had an obligation to resolve the conflict and that her failure to do so requires remand. (*Id.*)

Before January 6, 2025, SSA regulations stated that an ALJ has an "'affirmative responsibility' to ask whether a vocational expert's evidence 'conflicts with information provided in the DOT' before relying on that evidence to support a determination of nondisability.'" *Overman v. Astrue*, 546 F.3d 456, 462-63 (7th Cir. 2008); SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).

Further, if "evidence from a [vocational expert] 'appears to conflict with the DOT,' SSR 00-4p require[d] further inquiry: an ALJ must obtain 'a reasonable explanation for the apparent conflict.'" *Overman*, 546 F.3d at 463 (quoting SSR 00-4p). A

10

conflict is apparent if it is "so obvious that the ALJ should have picked up on [it] without any assistance." *Weatherbee v. Astrue*, 649 F.3d 565, 570 (7th Cir. 2011) (quoting *Overman*, 546 F.3d at 463).

The Court makes no determination about whether there was an apparent conflict between the vocational expert's testimony and the DOT, because on January 6, 2025, the SSA rescinded SSR 00-4p and replaced it with SSR 24-3. [https://www.ssa.gov/OP_Home/rulings/di/02/SSR2024-03-di-02.html](https://www.ssa.gov/OP_Home/rulings/di/02/SSR2024-03-di-02.html) *visited on February 7*, 2025. Pursuant to this change, ALJs are "no longer require[d] ... to identify and resolve conflicts between occupational information provided by [vocational experts] and information in the DOT" due, in part, to the concern that "[a]t the hearing level, the requirements of SSR 00-4p have led to unnecessary remands to resolve apparent conflicts that were not identified at the hearing when the [vocational expert] testified." SSR 24-3p."

As for the applicable date of the SSR 24-3p, the regulation states that it expects that federal courts will review final administrative decisions using the rules in effect at the time the SSA issued them. But it further explains that "[i]f a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of this SSR, we will apply this SSR to the entire period at issue in the decision we make after the court's remand." Because the Court is remanding this case for further

administrative proceedings, it leaves any future application of SSR 24-3p to decisions made at the administrative level.

## CONCLUSION

For the reasons explained above, the Court grants Plaintiff's motion for summary judgment (Dkt. 12) and denies Defendant's motion. (Dkt. 18.)

**SO ORDERED.**

                ENTER:

                */s/ Laura K. McNally*
                _____

                **LAURA K. MCNALLY**
                **United States Magistrate Judge**

**DATED: February 11, 2025**